**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RAYBON HUNT and ANNIE HUNT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:07-CV-52 |
| | § | |
| TODD HUNTER, DEREK WOODS, and | § | |
| PAUL TOMPLAIT, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Jasper County Deputy Sheriff Paul Tomplait's ("Tomplait") Motion for Summary Judgment (#42) and Defendants Jasper Police Department Chief Todd Hunter ("Hunter") and Officer Derek Woods's ("Woods") Motion for Summary Judgment (#48). Defendants seek summary judgment on Plaintiffs Raybon Hunt ("Mr. Hunt") and Annie Hunt's ("Mrs. Hunt") (collectively, "Plaintiffs") claims arising under the Civil Rights Acts of 1871, 42 U.S.C. § 1983. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment should be granted in part and denied in part.

I.      Background

On the afternoon of September 26, 2006, members of the Houston Police Department contacted the Jasper Police Department in Jasper, Texas, to request assistance in apprehending Edward Hunt, Jr. ("Hunt, Jr."), who had allegedly exchanged gunfire with Houston police and attempted to run over a uniformed officer with his vehicle. Based on an anonymous tip, Hunt, Jr., was believed to have fled the Houston area in a white El Camino driven by his cousin, Terrell

Williams ("Williams").  Information obtained from the mother of Williams's child and a tracking device in Williams's cellular telephone monitored by United States Deputy Marshal Steve Lohenstein ("Lohenstein"), indicated to Houston police that the men were traveling to a home located at 126 Circle Drive in Brookeland, Texas.  This residence was later discovered to be owned by Hunt, Jr.'s father, Edward Hunt, Sr. ("Hunt, Sr.").

Between 4:30 p.m. and 5:00 p.m., Houston police began arriving at the Jasper police station.  In anticipation of the Houston officers' obtaining a search warrant, Hunter directed Detective Paul Noyola ("Noyola") to conduct initial surveillance of the Browndell area of Brookeland.  Hunter instructed Noyola to look for a white El Camino driven by a young, African-American male.  Hunter also contacted Tomplait to request assistance in locating a home, which Tomplait claims Hunter described to him as "the Hunt residence." At Hunter's direction, Tomplait took several members of the Jasper Police Department into a briefing room where he drew a diagram on a dry erase board depicting the approximate location of Plaintiffs' home at 940 Church Street in Brookeland.  Tomplait knew that members of the Hunt family resided at that location because he had been there on a previous occasion in an attempt to arrest Plaintiffs' son, Marcus Hunt.  According to Tomplait, although he took no steps to determine whether any other Hunts lived in the Browndell community, he believed that 940 Church Street was the only Hunt residence in the area.

After the initial briefing, Hunter instructed Tomplait, Noyola, and another officer to establish a staging area several miles from Plaintiffs' home and await further orders. Hunter, Woods, other members of the Jasper Police Department, four Houston police officers, and Lohenstein eventually met them at the site.  At least one of the Houston officers, Sergeant Breck

2

McDaniel ("McDaniel"), had in his possession a valid warrant authorizing police to enter and search a residence at 126 Circle Drive in Brookeland, which was described as "a trailer/mobile home that is red in color" with "some unpainted lattice work."[1]  It is undisputed that Plaintiffs' home was dark brown and that it was not located at 126 Circle Drive.  Moreover, according to Plaintiffs, "940" was painted on a large post in front of their home, which would have been easily visible when a light was shined on it.  Upon the arrival of McDaniel, however, neither Hunter nor Tomplait read the search warrant or inquired about its contents.  Instead, matters proceeded quickly when Lohenstein announced that he had recently received a transmission from Williams's cellular telephone.  Lohenstein showed Tomplait the computer screen that he was using to track the transmission and asked if the flashing icon corresponded with the location where the suspect was believed to be located.  At best, Tomplait could only confirm that the signal might be within 100 yards of Plaintiffs' home if one traveled through the woods.

A few minutes later, at approximately 8:30 p.m. or 9:30 p.m., Hunter approached Tomplait and instructed him to lead the assembled officers to the search location.  Following Tomplait's lead, the search team arrived at Plaintiffs' home with their lights off in order to avoid alerting the occupants of their approach.  Once at the residence, Tomplait, who was then charged with securing the road, shined his spotlight on the home.  Woods went to the back of the residence to cover the rear exit, while Hunter and other members of the search team knocked on the front door and announced themselves as police.  When there was no response, the search team broke down the front door and entered Plaintiffs' home.  At the back of the house, Woods encountered

---

[1] The origin of this description is unclear.  McDaniel claims that it was provided to him by a "narcotics officer or undercover-type officer" with the Jasper Police Department; however, he was unable to identify the individual.

3

Plaintiffs attempting to exit through the rear door and ordered them at gunpoint to get down on the ground.

While other officers searched Plaintiffs' home for Hunt, Jr., Hunter approached Mr. Hunt, placed his knee in his back, and searched him for any weapons.  After determining that Mr. Hunt had no weapons on his person, Hunter allowed Woods to put his weapon away and assist Mrs. Hunt into a nearby chair.  Woods then left the room while Hunter questioned Mr. Hunt, who was still lying on the floor.  Mr. Hunt was not allowed to get off the ground until another officer informed Hunter that the search team had completed their search but had not found Hunt, Jr., on the premises.  At that point, Mr. Hunt asked if he could retrieve his driver's license, which was in the pocket of a pair of pants hanging on the wall.  After viewing Mr. Hunt's license, Hunter realized that he and his team were in the wrong home.  He immediately ordered all officers to exit Plaintiffs' residence.

Plaintiffs filed suit in this court on January 25, 2007, alleging that Hunter and certain named Houston police officers violated their Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiffs amended their complaint on May 15, 2007, to name Tomplait, Woods, Noyola, and other members of the Jasper Police Department as additional defendants.  After taking depositions, however, Plaintiffs voluntarily dismissed the majority of these defendants from the case on January 7, 2008.  Consequently, only Plaintiffs' claims against Hunter, Woods, and Tomplait (collectively, "Defendants") remain pending in this action.

On January 22, 2008, Tomplait filed a motion for summary judgment, raising the defense of qualified immunity.  Hunter and Woods filed a similar motion on February 6, 2008, also claiming entitlement to qualified immunity.  Plaintiffs responded to Defendants' motions on

January 28, 2008, and February 12, 2008, respectively.  They contend that Hunter and Tomplait

failed to engage in reasonable efforts to identify the place to be searched.  They further argue that

Hunter and Woods detained them in an objectively unreasonable manner.  Plaintiffs, therefore,

claim that Defendants are not entitled to qualified immunity.

II.    Analysis

   A.    Summary Judgment Standard

   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The

parties seeking summary judgment bear the initial burden of informing the court of the basis for

their motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d

347, 349 (5th Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);

*Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd.

v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  Where a defendant moves for summary

judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion,

"it must adduce evidence to support each element of its defenses and demonstrate the lack of any

genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d

496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford*

*Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).   To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).   "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.   "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original).   Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471.   The moving parties, however, need not negate the elements of the nonmovants' case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific

facts, to show the existence of a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 322 n.3

(quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith*

*ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*,

353 F.3d 393, 404 (5th Cir. 2003).  "[T]he court must review the record 'taken as a whole.'"

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d

378, 382 (5th Cir. 2005).  All the evidence must be construed "in the light most favorable to the

non-moving party without weighing the evidence, assessing its probative value, or resolving any

factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996);

*see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624;

*Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken*

*Exploration Co.*, 261 F.3d at 471.  The evidence of the nonmovants is to be believed, with all

justifiable inferences drawn and all reasonable doubts resolved in their favor.  *Palmer v. BRG of*

*Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389

F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir.

2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th

Cir.), *cert. denied*, 540 U.S. 815 (2003).

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the

nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14

(1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,

879 F.2d 1005, 1012 (2d Cir. 1989)).  "If the [nonmoving party's] theory is . . . senseless, no

reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovants' burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity from Plaintiffs' § 1983 claims brought against them in their individual capacities.   Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)); *accord Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 823 (5th Cir. 2007); *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005); *Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004).   "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998) (citing *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)); *see also Beltran*, 367 F.3d at 302-03.

> The qualified or "good faith" immunity doctrine was established to reconcile two competing interests.  One interest is the compensation of persons whose federally protected rights have been violated.  Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties.  Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

*Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir. 1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *McCully*, 406 F.3d at 380 (quoting *Mitchell*, 472 U.S. at 526); *see Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003).

Because it is "an affirmative defense, the defendant must both plead and establish his entitlement to immunity." *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Cronen*, 977 F.2d at 939); *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Harlow*, 457 U.S. at 815. For summary judgment purposes, however, "a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir.), *cert. denied*, 540 U.S. 826 (2003) (quoting *Beck v. Texas State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000)). "It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Id.*; *accord Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). "'Where . . . a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the *plaintiff then has the burden* to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (emphasis added) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997));

accord *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *McCully*, 406 F.3d at 380. As the Fifth Circuit has explained, "'[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; *our precedent places that burden upon plaintiffs.*'" *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (emphasis added) (quoting *Pierce*, 117 F.3d at 871-72).

"Whether a government official is entitled to qualified immunity 'generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Texas Faculty Ass'n v. University of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Siegert*, 500 U.S. at 231; *Mitchell*, 472 U.S. at 530; *Harlow*, 457 U.S. at 818; *Stotter*, 508 F.3d at 823; *Atteberry*, 430 F.3d at 253; *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *McClendon*, 305 F.3d at 327. A defendant "is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct." *Blackwell v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)); *see Saucier*, 533 U.S. at 201; *Stotter*, 508 F.3d at 823; *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

In considering a claim of qualified immunity, the court must utilize a bifurcated approach:

> To determine whether a defendant is entitled to qualified immunity, [the] court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred.

*Hampton*, 480 F.3d at 363; *accord Easter*, 467 F.3d at 462; *Michalik*, 422 F.3d at 257; *Tarver*,

410 F.3d at 750; *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 613-14 (5th Cir. 2004), *cert.*

*denied*, 544 U.S. 1062 (2005); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective &*

*Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004); *Beltran*, 367 F.3d at 303.  "The first prong

requires the plaintiff to allege 'the deprivation of an *actual* constitutional [or statutory] right.'"

*Hampton*, 480 F.3d at 363 (emphasis and alteration in original) (quoting *Felton v. Polles*, 315

F.3d 470, 477 (5th Cir. 2002)).   "For the second prong, by contrast, 'the right . . . alleged to

[have] been violated must have been 'clearly established' in a more particularized, and hence more

relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right.'" *Id.*  (alterations in original) (quoting

*Polles*, 315 F.3d at 478); *see also Brosseau*, 543 U.S. at 198-99; *Anderson*, 483 U.S. at 640;

*Stotter*, 508 F.3d at 823; *Atteberry*, 430 F.3d at 256; *Alexander v. Eeds*, 392 F.3d 138, 146-47

(5th Cir. 2004); *Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004), *cert. denied*, 543 U.S. 872

(2004).  The question of whether an officer's conduct was objectively reasonable in light of clearly

established law is a matter of law for the courts to determine.  *Goodson v. City of Corpus Christi*,

202 F.3d 730, 736 (5th Cir. 2000).  "The touchstone of this inquiry is whether a reasonable person

would have believed that his conduct conformed to the constitutional standard in light of the

information available to him and the clearly established law." *Id.*

      1.   <u>Search of Plaintiffs' Home</u>

     In the present case, Plaintiffs claim that Hunter and Tomplait violated their Fourth

Amendment rights by participating in a warrantless search of their home.  The Fourth Amendment

provides that "[t]he right of the people to be secure in their persons, houses, . . . and effects,

against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

"'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Accordingly, "'[w]arrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search.'" *United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008) (quoting *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007)); *see also Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *United States v. Gould*, 364 F.3d 578, 599 (5th Cir. 2004); *Roe v. Texas Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 405 n.12 (5th Cir. 2002). In this instance, it is undisputed that Defendants did not possess a valid warrant for 940 Church Street at the time they searched Plaintiffs' home. Moreover, Defendants have not suggested any constitutionally sufficient justification for conducting a warrantless search of the residence.

Even if Plaintiffs' constitutional rights were violated, however, Hunter and Tomplait may invoke qualified immunity if their conduct was objectively reasonable in light of clearly established law. *See Zarnow*, 500 F.3d at 408. For example, in *Maryland v. Garrison*, the police searched the wrong apartment because they incorrectly believed it to be the only unit on the third floor. 480 U.S. 79, 80 (1987). Despite the lack of a warrant, the Supreme Court upheld the search, finding that there was a "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id*. at 87. Accordingly, law enforcement officers are generally granted qualified immunity if the evidence is undisputed that they merely made an honest mistake when entering the incorrect home. *See*

*Simmons v. City of Paris*, 378 F.3d 476, 479-80 (5th Cir. 2004).  In order for the execution of a

search warrant on the wrong premises to be considered an honest mistake, however, it is clearly

established that the officers' conduct prior to entering the residence must be "consistent with a

reasonable effort to ascertain and identify the place to be searched."  *Garrison*, 480 U.S. at 88;

*see Rogers v. Hooper*, No. 07-40809, 2008 WL 828955, at *4 (5th Cir. Mar. 27, 2008); *Harman

v. Pollock*, 446 F.3d 1069, 1082 (10th Cir. 2006); *United States v. Patterson*, 278 F.3d 315, 318

(4th Cir. 2002); *Hartsfield v. Lemacks*, 50 F.3d 950, 954-55 (11th Cir. 1995).[2]

Here, Plaintiffs contend that Hunter and Tomplait are not entitled to qualified immunity

because they did not engage in reasonable efforts to identify the correct search location.  Upon

reviewing the submissions of the parties and the applicable law, the court agrees that these

defendants' actions were not objectively reasonable as a matter of law.  Despite the issuance of

a valid search warrant in this case, which particularly described the place to be searched, Hunter

and Tomplait admit that they never read the warrant prior to mistakenly leading the search team

to Plaintiffs' home.  In this situation, such a failure cannot be excused as a reasonable mistake.

The Ninth Circuit has explained:

> The officers who lead the team that executes a warrant are responsible for ensuring
> that they have lawful authority for their actions.  A key aspect of this responsibility

---

[2] Police are also barred from invoking qualified immunity if they fail to terminate their search as soon as they are put on notice of a risk that they might be in the wrong residence.  *Simmons*, 378 F.3d at 479-80; *Pray v. Sandusky*, 49 F.3d 1154, 1159-60 (6th Cir. 1995); *see also Garrison*, 480 U.S. at 87. In this case, Defendants argue that it is undisputed that they did not continue the search of 940 Church Street after discovering that they had entered the wrong residence.  They claim that Hunter ordered all officers to exit the premises as soon as he identified Plaintiffs and discovered that an error had been made. In their responses, Plaintiffs do not contest Defendants' characterization of these facts nor do they claim that officers remained on the premises for an unreasonably long period of time.  Hence, the court concludes that the time of the officers' departure does not bar Defendants' entitlement to qualified immunity.  *See Felton*, 315 F.3d at 477 (finding that the plaintiff has the burden of rebutting qualified immunity once raised by the defendant).

> is making sure that they have a proper warrant that in fact authorizes the search and
> seizure they are about to conduct. The leaders of the expedition may not simply
> assume that the warrant authorizes the search and seizure. Rather, *they must
> actually read the warrant* and satisfy themselves that they understand its scope and
> limitations, and that it is not defective in some obvious way.

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002) (emphasis added), *aff'd
sub nom. Groh v. Ramirez*, 540 U.S.  551 (2004).  As the officer-in-charge on the night of the
search, Hunter had a duty to read the search warrant to ensure that it authorized entry into
Plaintiffs' home.  Likewise, as the officer responsible for leading the search team to the correct
location, Tomplait had an obligation to consult the warrant to verify that the home identified in
the warrant was, in fact, the Hunt residence with which he was familiar.[3]

In light of Hunter's and Tomplait's failures to fulfill these duties, Plaintiffs properly urge
the court to apply the Eleventh Circuit's holding in *Hartsfield v. Lemacks* to the facts of this case.
In *Hartsfield*, an officer obtained a warrant to search a residence that he had personally visited.
50 F.3d at 955.  On the day of the search, however, the officer failed to re-read the warrant to
confirm that he was leading the search team to the correct location.  *Id.*  The court found that the
resulting mistaken entry into the wrong home could have been avoided if the officer had simply
checked the address on the warrant.  *Id.*  Consequently, the court held that the officer was not
entitled to qualified immunity, stating that "all reasonable police officers should have known that
[his] acts—searching the wrong residence when he had done nothing to make sure he was

---

[3] Tomplait claims that his role in leading the officers to Plaintiffs' home is not sufficient to establish
§ 1983 liability.  Because he never actually entered the residence at 940 Church Street, Tomplait argues
that he cannot be held accountable for any unlawful search.  These arguments, however, are unpersuasive
because his misidentification of the place to be searched clearly contributed to the search team's entering
the wrong home.  *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 472-73 (5th Cir.), *cert.
denied*, 540 U.S. 1018 (2003) (finding that a § 1983 plaintiff is only required to "show a causal connection
between the deprivation of that right and the actions of the defendant against whom relief is sought").

searching the house described in the warrant—violated the law." *Id.* Similarly, in the case at bar, Hunter and Tomplait never consulted the search warrant although even a cursory review would likely have averted the mistaken entry into Plaintiffs' home. Indeed, it is uncontroverted that Plaintiffs' home was not located on Circle Drive and did not match the description provided in the warrant. Moreover, Plaintiffs' residence was separated from 126 Circle Drive by several other homes, and, according to Plaintiffs, the address was marked on a post that would have been clearly visible when illuminated.

Defendants rely heavily on the fact that it was dark outside when Plaintiffs' home was entered, arguing that even if they had read the warrant, it would have been too dark to verify the address or check the description of the home. While the court acknowledges that the potential for mistakes increases when lighting is poor, the Fifth Circuit has observed that the execution of a search warrant at night actually increases the need to take extra precautions. *See Rogers*, 2008 WL 828955, at *4. Hence, Defendants' failure to read the warrant cannot be excused simply because it was dark outside when the warrant was executed. Although Defendants were intent on approaching the residence with stealth, a reasonably competent officer would have, at a minimum, consulted the warrant and confirmed that the search team was at least on the correct street. Furthermore, the evidence shows that the officers were carrying flashlights and that Tomplait directed his spotlight at the residence as they approached. Thus, it appears that Hunter and Tomplait had ample opportunity to compare the physical attributes of the home to the description provided in the warrant and to look for a marked address before the search team entered Plaintiffs' home.

Notwithstanding their failure to read the search warrant, Hunter and Tomplait made some feeble attempts to identify the correct search location. For example, before erroneously searching Plaintiffs' home, Hunter sent Noyola to conduct surveillance in the Browndell area and instructed Noyola to attempt to locate a white El Camino driven by a young, African-American male. Later, he dispatched other officers to monitor the location of the vehicle and to watch Plaintiffs' home. There is no indication, however, that any of these investigative efforts ever tied the vehicle in which Hunt, Jr., was believed to be traveling to 940 Church Street. At best, the surveillance conducted by various members of the Jasper Police Department merely indicated that Hunt, Jr., was in the Browndell area. According to the officers' depositions, the white El Camino was seen driving in the southbound lane of U.S. 69, at a residence on FM 1007, traveling down Church Street, and at a neighborhood convenience store. Noyola even observed the vehicle at 126 Circle Drive. No officer testified at deposition, however, that he saw a white El Camino at 940 Church Street. Consequently, although the surveillance gathered at Hunter's direction was arguably sufficient to confirm suspicions that Hunt, Jr., was in the Browndell community, it was not enough to validate the warrantless intrusion into Plaintiffs' home.

Tomplait also consulted with Lohenstein regarding the transmission from Williams's cellular telephone before leading the search team to the wrong location. Using Lohenstein's tracking instrumentation, however, Tomplait could only confirm that Plaintiffs' home might be within 100 yards of the location indicated on the screen. The record reflects that there were at least seven homes within approximately 230 yards of 940 Church Street and that some of these were within just a few feet of each other. Hence, like Hunter's failed attempts to tie the white El Camino to Plaintiffs' residence, Tomplait's efforts to pinpoint 940 Church Street as the location

of Williams's cellular telephone were insufficient to distinguish Plaintiffs' home from all others in the neighborhood as the proper place to be searched.

In sum, rather than simply reading the warrant and confirming that it authorized police to search Plaintiffs' home as required by law, Hunter and Tomplait chose to base their identification of the residence to be searched entirely on Tomplait's recollection of a home occupied by some members of a Hunt family,[4] broad surveillance that never specifically tied 940 Church Street to the vehicle in which Hunt, Jr., was believed to be traveling, and information from a tracking device incapable of pinpointing a particular residence. Under the circumstances, any competent officer would know that these superficial attempts to identify the correct address were inadequate and did not constitute a reasonable effort to ascertain the place to be searched. Therefore, Hunter and Tomplait are not entitled to qualified immunity with respect to the mistaken search of Plaintiffs' home.

2.    Detention of Plaintiffs

In addition to contending that Defendants' warrantless search of their home was unconstitutional, Plaintiffs also claim that they were detained by Hunter and Woods in a manner that violated their Fourth Amendment rights. Specifically, Plaintiffs argue that Hunter and Woods unreasonably "[stuck] their guns in the faces of an old man and his wife when they were looking for a young man." They also complain that Mrs. Hunt was forced to lie on the floor with her dress raised to her waist. Notably, Plaintiffs have not cited any authority in support of their argument that these acts were unreasonable.

---

[4] Indeed, it does not appear that Tomplait or Hunter attempted to ascertain whether more than one family with the Hunt surname resided in the Browndell community.

18

In *Michigan v. Summers*, the Supreme Court held that a search warrant implicitly carries with it the authority to "detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981); *accord Muehler v. Mena*, 544 U.S. 93, 98 (2005).  Such detentions may be justified by several legitimate law enforcement interests, including preventing residents from attempting to flee, reducing the risk that an officer will be physically harmed, and enabling police to complete a search in an orderly manner.  *Id.*  The Fourth Amendment, however, requires that officers' efforts to secure the premises be objectively reasonable.  *Los Angeles County v. Rettele*, ___ U.S. ___, ___, 127 S. Ct. 1989, 1992 (2007).  Actions that may be considered unreasonable include employing excessive force, utilizing unnecessarily painful restraints, or holding a subject for a prolonged period of time.  *Id.*

Plaintiffs' chief complaint is that they were held at gunpoint when it should have been obvious to police that they were not Hunt, Jr.  The reasonableness of officers' use of weapons while executing a search warrant is not evaluated by an innocent resident's reaction, however, but in light of the criminal activity of the suspect.  *Lewis v. City of Mt. Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997).  Here, when Hunter and Woods entered Plaintiffs' home, they believed that they had a valid search warrant authorizing them to locate a dangerous individual suspected of exchanging gunfire with law enforcement and attempting to run over a uniformed officer with a vehicle.  In such a situation, any reasonable police officer would have concluded that detaining the residents found in the home was necessary to ensure the safety of himself and his fellow officers.  Discovering Plaintiffs' presence in the home did not foreclose the possibility that Hunt, Jr., was elsewhere in the house or that Plaintiffs were involved in attempting to hide him from police.  *See Los Angeles County*, 127 S. Ct. at 1992 (finding that police could properly detain

19

occupants of a different ethnicity than the suspect because he might be armed and could be located in another part of the home).  Moreover, the evidence shows that Plaintiffs were attempting to leave the premises when they were ordered down on the ground by Woods.  Hence, both the safety of the officers and their interest in preventing Plaintiffs from fleeing justified Defendants' use of weapons in detaining Plaintiffs for a relatively brief period of time.

With regard to Plaintiffs' second complaint, that Mrs. Hunt was unreasonably forced to lie on the ground with her dress above her waist, the Supreme Court has held that the frustration, embarrassment, and humiliation caused by being detained even while nude is generally not enough to establish that officers have acted unreasonably.  *See id.* at 1993-94.  Rather, an innocent detainee's interest in covering herself where police safety may be at issue is outweighed by the need for officers to take unquestioned command of the situation in order to minimize the risk of harm to both the police and the occupants of the home.  *See id.* at 1993.  Furthermore, there is no evidence that Hunter, Woods, or any other member of law enforcement prevented Mrs. Hunt from pulling her dress down longer than was necessary to protect their safety.  In fact, Mrs. Hunt admits that she was subsequently assisted in getting off the ground and was helped to a chair after officers determined that the premises were secure.  Hence, Plaintiffs' arguments that they were held in an unreasonable manner are without merit.  Thus, the court finds that Hunter and Woods are entitled to qualified immunity as to the detention of Plaintiffs.

III.   Conclusion

In light of the foregoing, Hunter and Woods's Motion for Summary Judgment and Tomplait's Motion for Summary Judgment are granted in part and denied in part. Hunter and Woods acted reasonably in the manner in which they detained Plaintiffs while searching their

home.  Accordingly, the court grants summary judgment on the basis of qualified immunity as to Plaintiffs' claims that they were detained in an unreasonable manner.  The court holds as a matter of law, however, that Hunter and Tomplait may not invoke qualified immunity as a defense to Plaintiffs' unlawful search claims because they failed to make an objectively reasonable effort to identify the proper residence to be searched.  Consequently, Plaintiffs may proceed to trial on their unlawful search claims against Hunter and Tomplait, while Woods is dismissed as a defendant to this action.

SIGNED at Beaumont, Texas, this 5th day of May, 2008.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE